**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RAUL M. COTTO-RIVERA,** | : | |
| **Petitioner** | : | **No. 1:17-cr-00162** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| **Respondent** | : | |

**MEMORANDUM**

Before the Court is Petitioner Raul M. Cotto-Rivera ("Petitioner")'s motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 109.) In his motion, Petitioner alleges three (3) grounds for relief. (Id.) For the reasons that follow, the Court will deny Petitioner's motion.

## I. BACKGROUND

On May 17, 2017, a grand jury indicted Petitioner on thirteen (13) counts, including: (1) distribution of heroin (six counts); (2) conspiracy to distribute heroin and cocaine hydrochloride; (3) possession with intent to distribute heroin and cocaine hydrochloride; (4) distribution of marijuana (three counts); (5) possession with intent to distribute cocaine base, cocaine hydrochloride, and marijuana; and (6) possession of a firearm in furtherance of a drug trafficking crime. (Doc. No. 1.) Petitioner pleaded not guilty to the charges. (Doc. No. 15.) On March 8, 2018, the case proceeded to trial, following which Petitioner was found guilty on seven (7) counts. (Doc. No. 63.)

On August 9, 2018, Petitioner's court-appointed counsel, Kevin Hoffman ("Trial Counsel"), moved to withdraw as his attorney (Doc. No. 72), and the Court granted the request (Doc. No. 73). On August 24, 2018, the Court appointed attorney Elisabeth Pasqualini ("Post-Trial Counsel") to represent Petitioner at his sentencing. (Doc. No. 74.) On June 11, 2019, the

Court sentenced Petitioner to a term of two-hundred and sixty-two (262) months imprisonment followed by five (5) years' supervised release. (Doc. No. 96.) On June 24, 2019, Petitioner appealed the judgment to the Third Circuit Court of Appeals with the assistance of Post-Trial Counsel. (Doc. No. 98.) On April 6, 2020, the Third Circuit Court of Appeals affirmed Petitioner's conviction and sentence. (Doc. No. 101.)

On May 4, 2021, Petitioner filed his motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Doc. No. 109) and his brief in support of the motion (Doc. No. 110). In his brief, Petitioner requested an evidentiary hearing. (Doc. No. 110 at 10-11.) Both documents were prepared and submitted without the assistance of counsel. (Doc. Nos. 109-110.) On May 11, 2021, the Court sent Petitioner a Miller/Mason order and notice of election. (Doc. No. 111.) Petitioner returned the notice of election, indicating that he wanted the Court to rule on his motion to vacate as filed. (Doc. No. 112.) The Court subsequently issued a service and briefing order directing the Government to respond. (Doc. No. 113.) On June 22, 2021, the Government filed a motion concurring in Petitioner's request for an evidentiary hearing and requesting an extension of time to file its brief in opposition until the completion of the hearing. (Doc. No. 114.) The Court granted the Government's motion (Doc. No. 116) and appointed Petitioner attorney Craig Kauzlarich as counsel in connection with his § 2255 motion (Doc. No. 117).

Petitioner's motion to vacate rests on three grounds. (Doc. No. 109 at 4.) The first ground is an ineffective assistance of counsel claim. (Id.) Petitioner claims that Trial Counsel was ineffective because he erroneously advised Petitioner to reject a plea agreement offered by the Government that would have limited Petitioner's sentencing exposure to ten (10) years' imprisonment. (Doc. No. 110 at 7.) According to Petitioner, Trial Counsel advised him that the longest sentence he would be exposed to under the Guidelines was ten (10) years, and so the

Government's plea bargain provided no advantage over proceeding to trial. (Id.) However, Petitioner's exposure under the sentencing guidelines was much greater than what was allegedly calculated by Trial Counsel, and Petitioner was ultimately sentenced to almost twenty-two years' imprisonment. (Id. at 4.) The second ground Petitioner raises in his § 2255 motion is also an ineffective assistance of counsel claim. (Doc. No. 109 at 4.) Petitioner asserts that Trial Counsel and Post-Trial Counsel were ineffective because they failed to provide Petitioner with his case file following his appeal, impeding his ability to prepare a § 2255 motion. (Doc. No. 110 at 11-12.) The third ground Petitioner raises in his § 2255 motion is based on a bill pending before Congress, the Prohibiting Punishment of Acquitted Conduct Act of 2021, which would limit the ability of federal judges to base sentencing determinations on acquitted conduct. (Doc. Nos. 109 at 4, 110 at 13-15.)

On December 17, 2021, the Court held an evidentiary hearing on Petitioner's motion. The Government entered two proposed plea agreements as exhibits. (Doc. Nos. 129-2, 129-4.) The agreements state mandatory minimum sentences of fifteen (15) and ten (10) years, respectively, but do not set forth recommended maximum sentences. (Doc. Nos. 129-2 at 3, 129-4 at 3.) At the hearing, Petitioner testified that Trial Counsel encouraged him to reject a plea agreement based on erroneous advice that the maximum sentence the Court could impose if Petitioner was found guilty after trial was ten (10) years, and a sentence of five (5) years was possible. (Doc. No. 130 at 4-8.) Because he cannot read or write in English, Petitioner relied on Trial Counsel to explain the terms of any plea agreement offered by the Government, and he testified that Trial Counsel did not do so. (Id. at 14-15.) Petitioner's testimony differed from his § 2255 motion in that he stated that ten (10) years' imprisonment was the minimum, rather than

the maximum, sentence he believed could be imposed under the second plea agreement. (Id. at 10-11.) Petitioner did not testify as to his two additional grounds for relief.

The Government presented the testimony of Trial Counsel and Assistant United States Attorney Daryl Bloom ("Bloom"), who prosecuted the criminal case against Petitioner. (Id. at 2.) Trial Counsel testified that Petitioner was not willing to plead guilty and denied advising Petitioner that he was likely to receive a more favorable sentence if he went to trial. (Id. at 29-30.) Trial Counsel asserted that Petitioner was strongly opposed to pleading guilty to the possession of a firearm in furtherance of a drug trafficking crime. (Id. at 29.) Bloom testified that he met with Petitioner after the second plea agreement was offered. (Id. at 43-44.) During this meeting, Bloom testified, he informed Petitioner about the evidence the Government had in its possession, which was extensive, and explained to Petitioner the difference in his sentencing exposure under the plea agreement versus his potential exposure at trial. (Id. at 43-45.) Bloom also testified that Petitioner gave no indication at any point that he wanted to plead guilty, even if offered a more favorable plea agreement. (Id. at 49-50.) Additionally, Bloom stated that he found Trial Counsel to be highly competent and knowledgeable, both in terms of his knowledge of the Sentencing Guidelines and his performance at trial. (Id. at 47-49.)

Following the evidentiary hearing, the Court issued a briefing order, directing the Government to file a brief in opposition to Petitioner's motion and allowing Petitioner to respond. (Doc. No. 131.) In its brief in opposition, the Government argues that the evidence shows that Petitioner's ineffective assistance claims are without legal or factual basis. (Doc. No. 132 at 7-10.) In reply, Petitioner argues that, even if he was not affirmatively misinformed about the contents of the plea agreements, he at least misunderstood their contents, such that he could not have knowingly accepted or rejected the Government's plea offers. (Doc. No. 133 at 4-5.)

Petitioner indicates in his reply brief that he is no longer pursuing the second and third grounds for relief set out in his motion. (Id. at 2 n.1.)

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255(a), a federal prisoner may file a motion requesting that the sentencing court vacate, set aside, or correct his sentence on the basis "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the [C]ourt was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." See 28 U.S.C. § 2255(a). However, "§ 2255 does not afford a remedy for all errors that may have been made at trial or during sentencing." See United States v. Essig, 10 F.3d 968, 977 n.25 (3d Cir. 1993) (citing United States v. Addonizio, 442 U.S. 178, 185 (1979)). Rather, § 2255 is implicated only when the alleged error raises "a fundamental defect which inherently results in a complete miscarriage of justice." See Addonizio, 442 U.S. at 185.

As noted above, Petitioner's § 2255 challenge to his sentence is largely based on claims of ineffective assistance of counsel. Under the two-part test established by the Supreme Court in Strickland v. Washington, a petitioner alleging ineffective assistance of counsel must show that: (1) counsel's performance was deficient; and (2) the petitioner was prejudiced as a result. See 466 U.S. 668, 687 (1987). The right to effective assistance of counsel extends to the plea bargain process. See Lafler v. Cooper, 566 U.S. 156, 168 (2012); Missouri v. Frye, 566 U.S. 134, 145 (2012).

In order to be effective at the plea bargaining stage, defense counsel is required to inform his or her client of formal plea offers from the Government, see Frye, 566 U.S. at 145, as well as to provide "enough information to make a reasonably informed decision whether to accept a plea

offer," see United States v. Bui, 795 F.3d 363, 367 (3d Cir. 2015) (internal quotation marks omitted). "Knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992). However, "an erroneous strategic prediction about the outcome of trial is not necessarily deficient performance." See Lafler, 566 U.S. at 174.

Even if a petitioner shows that counsel performed deficiently by failing to adequately inform him of the substance of a plea offer, the petitioner must also show prejudice. See Strickland, 466 U.S. at 687. To demonstrate prejudice in the context of a rejected plea offer, a petitioner must show that: (1) he would have accepted the plea offer had he been afforded effective assistance of counsel; (2) there is a reasonable probability that the plea would have been entered by the prosecution and accepted by the trial court; and (3) the plea would have resulted in a lesser charge or a sentence of less prison time. See Lafler, 566 U.S. at 164; Shotts v. Wetzel, 724 F.3d 364, 376 (3d Cir. 2013).

## III. DISCUSSION

As noted, supra, Petitioner asserts one ground for relief, which the Court considers below.[1]

---

[1] Although Petitioner has indicated that he no longer intends to pursue his second and third grounds for relief, the Court notes that they are substantively without merit. (Doc. No. 133 at 2 n.1.) The second ground, in which Petitioner contends that the failures of both Trial Counsel and Post-Trial Counsel to provide him with his case file for purposes of preparing his § 2255 motion amounts to ineffective assistance, (Doc. No. 110 at 11-12), is incompatible with the basic contours of the law, because: (1) Petitioner was not being represented by Trial Counsel or Post-Trial Counsel at the time of the conduct in question, see Ragland v. United States, 756 F.3d 597, 600 (8th Cir. 2014) (noting that the evaluation of an ineffective assistance claim involves looking at "counsel's challenged conduct at the time of his representation"); and (2) the challenged conduct did not affect the outcome of Petitioner's criminal case, see Strickland, 466 U.S. at 687 (noting the two-part ineffective assistance test is aimed at determining whether there was a "breakdown in the adversary process that renders the result unreliable"). Petitioner's third ground for relief, in which he requests that the Court resentence him if the Prohibiting

**A. Ineffective Assistance of Counsel: Rejection of Plea Agreement**

Petitioner claims that Trial Counsel was ineffective because he advised him to reject a favorable plea agreement by falsely representing that he was likely to receive a five-year sentence at trial and that the judge could not impose a sentence greater than ten (10) years following trial. (Doc. No. 110 at 7.) This ground is unsupported by the evidence of record.

The Government presented ample testimony that Trial Counsel's performance was not deficient. Trial Counsel testified that he explained in detail Petitioner's sentencing exposure should he choose to go to trial, which was far greater than ten (10) years. (Doc. No. 130 at 30-32.) According to Trial Counsel, he discussed a variety of possible sentencing outcomes with Petitioner:

> Q. Did you discuss with him the possibility of conviction on the drug counts but not on the gun count, what that would ultimately result -- which is what happened here. Did you discuss that scenario with him?
>
> A. We discussed what would happen if he won or lost certain charges, but at the end of the day, the number was so high that it didn't change our strategy.
>
> . . . .
>
> Q. Okay. And is it your recollection that you would basically give a client an idea of, like, how high the ceiling could go in a case like this?
>
> A. In regards to the guideline range I normally would have. I can say that in this case, the maximum risk was life, and that was made pretty clear to him on a couple of occasions.

(Id. at 31-32.) Trial Counsel also testified that he never discussed the possibility of Petitioner being sentenced to as little as five (5) years imprisonment, because the case was an "all-or-

---

Punishment of Acquitted Conduct Act of 2021 becomes law, is meritless because no law has yet been passed upon which the Court could take action to modify Petitioner's sentence. (Doc. No. 110 at 13-15.)

nothing proposition" given the interrelation of the drug and firearm charges. (Id. at 31.) The Court credits Trial Counsel's testimony, which indicates his performance at the plea bargaining stage was not deficient. The Court also credits Bloom's testimony that Trial Counsel was highly competent and knowledgeable. (Id. at 47-49.) In light of this testimony, the Court is not convinced by Petitioner's claims that Trial Counsel represented that a five-year sentence was a likely outcome of trial and that the Court could not impose a sentence greater than ten (10) years after a trial. (Id. at 14.)

Even if Trial Counsel did give Petitioner erroneous advice as to the proposed plea agreements, the evidence suggests no prejudice would have resulted because any deficiency would have been cured by Petitioner's conversation with Bloom. Bloom testified that he met with Petitioner at York County Prison to discuss Petitioner's desire to proceed to trial. (Id. at 43.) According to Bloom, his normal practice during such a meeting is to review the evidence against a defendant as well as their comparative sentencing exposure:

> Q. Okay. Why is it that you would go meet with a defendant directly with his attorney?
>
> A. So we often will do what's called a reverse proffer where we -- if an individual is -- they want to exercise their right to trial, we sometimes will sit down with them to go through actually what the – it's twofold, actually go through what the evidence is against him. In this case, we had a lot of evidence against him. We had a number of cooperators. So that's one reason. We kind of get him to inform him about what we have. And then the second is to really kind of go through the guidelines. So I usually take my guidelines and a tablet and I kind of write them down, usually. I provide them to the defendant so he's aware of what he's looking at. I usually do that twofold. I provide it to him with what the likely guidelines would be with going to trial and then what the likely guidelines would be with a plea agreement, whether there may be some concessions and he would receive credit for acceptance of responsibility.

(Id. at 43-44.) Bloom's testimony demonstrates that Petitioner was adequately informed of his sentencing exposure before rejecting the Government's plea offer. Even if Trial Counsel's

advice to Petitioner was somehow deficient, that deficiency would have been cured by Bloom's explanation of Petitioner's sentencing exposure.

Further indicating a lack of prejudice, the Government offered testimony that Petitioner did not reject the plea agreements because he was misinformed or confused about their contents, but rather because Petitioner was strongly opposed to pleading guilty. (Id. at 29, 45.) Trial Counsel testified that Petitioner refused to accept a plea agreement because both agreements would have required Petitioner to plead guilty to possession of a firearm in furtherance of a drug trafficking crime:

> Q. Mr. Cotto-Rivera has testified that he always wanted to resolve his case, he never wanted to go to trial. Is that your recollection of the situation?
>
> A. No.
>
> Q. Can you give us what your recollection of the scenario was?
>
> A. He did not want to have the gun charge. The gun charge, in particular, he found offensive. He did not have a gun in furtherance of a drug offense, and he did not want to plead.

(Id. at 29.) Likewise, Bloom testified that his meeting with Petitioner led him to believe that Petitioner was not amenable to accepting a plea offer from the Government:

> Q. The last question I have for you, Mr. Bloom, is, did you ever have any indication from your discussions with Mr. Hoffman or your discussions when you were meeting directly with Mr. Cotto-Rivera that you recall where Mr. Cotto-Rivera wanted to plead guilty and wanted to avoid going to trial? Was that sort of the negotiating posture from your perspective?
>
> A. No, just the opposite. My understanding is Mr. Cotto-Rivera did not want to plead guilty, and despite our attempts to have a resolution of this matter prior to trial, he elected to go to trial.

(Id. at 45.) The Government's evidence strongly supports a finding that Trial Counsel was not deficient in advising Petitioner, and that even if he was, Petitioner would not have accepted either plea agreement as offered. In response, Petitioner offers only his own testimony that he

was amenable to pleading guilty, which the Court finds insufficient to counter the testimony offered by the Government. (Id. at 4-5, 7-8, 11.)

Petitioner's testimony lacks credibility because it contradicts not only the testimony of the Government's witnesses but also his own representations. In Petitioner's uncounseled § 2255 motion, he claims that "the Government offered a standard Rule 11(c)(1)(3) plea to [Petitioner] that limited his sentencing exposure to a maximum term of imprisonment of 10 years." (Doc. No. 110 at 7.) At the evidentiary hearing, the Government presented the proposed plea agreements, which show that Petitioner was never offered a plea agreement that capped his sentencing exposure at ten (10) years' imprisonment. (Doc. Nos. 130, 129-1-129-4.) Rather, the exhibits show that ten (10) years was the lowest mandatory minimum sentence offered to Petitioner under either proposed plea agreement. (Doc. Nos. 129-2 at 3, 129-4 at 3.) Petitioner then testified that he was offered two plea agreements. (Doc. No. 130 at 4-5, 10-11.) According to Petitioner's testimony, he understood the second agreement to provide a minimum, not a maximum, sentence of ten (10) years' imprisonment:

> Q. And then the ten-year offer, the same thing, was that the least you would get would be ten years or that would be the most you would get would be ten years?
>
> A. I think that would be the less.
>
> Q. The least you would get. And you had said earlier that there was a discussion with Mr. Hoffman, and he explained that you could get more than the ten years if you accepted that?
>
> A. Yes, sir.

(Id. at 10-11.) In Petitioner's post-hearing brief, he changed his narrative regarding the plea agreement to reflect his hearing testimony, arguing that he "was advised by his counsel that if he accepted the 'ten year' offer, the sentencing court could impose additional time above the ten years, but if he went to trial, he could receive no more than ten years, and possibly as few as five

years."  (Doc. No. 133 at 4-5.)  Because of the inconsistences between Petitioner's § 2255 motion and his testimony and post-hearing brief, the Court cannot credit Petitioner's assertion that he was advised by Trial Counsel to reject the plea agreements offered by the Government.

The weight of the evidence suggests that Petitioner was adequately informed of the contents of the proposed plea agreements, and therefore Trial Counsel's performance was not deficient.  See Bui, 795 F.3d at 367 (holding that counsel is required to give a petitioner "enough information to make a reasonably informed decision whether to accept a plea offer").  If Trial Counsel's advice had been deficient, the deficiency would have been cured by Bloom's meeting with Petitioner, in which he thoroughly explained the implications of proceeding to trial.  See Strickland, 466 U.S. at 694 (holding that prejudice requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").  Even if, after his meetings with both Trial Counsel and Bloom, Petitioner was still misinformed or confused as to certain aspects of the plea agreements, he has not shown "a reasonable probability" that he would have accepted either version of the agreement had he accurately understood their contents.  See Lafler, 566 U.S. at 164 (holding that a finding of prejudice in the context of a rejected guilty plea requires showing a "reasonable probability that the plea offer would have been presented to the court").  Additionally, Petitioner's argument that he would have received a lower sentence under either plea agreement is belied by the actual contents of the agreements, which provide no caps for Petitioner's sentence.  (Doc. Nos. 129-2, 129-4.) Petitioner may well have received the same or similar sentence had he accepted a plea agreement.  See Lafler, 566 U.S. at 164 (holding that prejudice stemming from the rejection of a guilty plea requires a showing that "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed").

Therefore, the Court finds no evidence either that Trial Counsel's performance was deficient or that Petitioner was prejudiced by any such deficiency.

### B. Certificate of Appealability

In proceedings brought under § 2255, a petitioner cannot appeal to the circuit court unless a certificate of appealability ("COA") has been issued. A court may not issue a COA unless "the applicant has made a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2). In other words, a COA should not issue unless "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." See Slack v. McDaniel, 529 U.S. 473, 484 (2000). Because the Court concludes that Petitioner's claims are meritless, the Court finds that reasonable jurists would not disagree with the Court's assessment of Petitioner's claims. Accordingly, a COA will not issue in this case.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Petitioner's § 2255 motion. (Doc. No. 109.) An appropriate Order follows.